TOMASA DÁVILA PADRÓ, Plaintiff and Appellant, v. AMPARO CÓRDOVA DÁVILA ET AL., Defendants and Appellees.

No. 10559. Argued February 2, 1953.—Decided September 20, 1954.

126

*Isaías Rodríguez Moreno* for appellant. *José R. Fournier* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This is a petition for declaratory judgment wherein plaintiff-appellant alleges that she is the owner of a house and lot located at Las Flores Street in Cataño, Puerto Rico, which she acquired on March 6, 1912, by purchase from Jacinto Lasalle, and that she immediately entered into the possession and enjoyment of the property as sole owner notwithstanding the fact that the property is recorded in the Registry of Property of Bayamón in favor of Ramón Córdova Díaz; that the latter appeared at the execution of the deed in order to acquire the property but for the sole benefit of appellant herein, who was the one who paid the selling price with her own money; that in the acquisitive title of such property it was made to appear that the house and lot was owned by the late Ramón Córdova Díaz, but subject to the latter's express verbal condition that the ownership title would be transferred to plaintiff-appellant upon her demand to Ramón Córdova Díaz; that plaintiff-appellant requested the heirs of Ramón Córdova Díaz, defendants herein, to transfer the title of the house and lot to her, which they have refused to do; and that the judicial administratrix of the estate has advertised the public sale of appellant's property to be held on February 27, 1948, wherefore plaintiff-appellant requested the court of first instance to render judg-

ment declaring plaintiff-appellant to be the sole owner of the real property, and ordering the cancellation in the Registry of Property of the record in favor of the late Ramón Córdova Díaz.

The defendants alleged in their answer that the complaint did not state facts sufficient to constitute a good cause of action against defendants, and that the property in litigation belongs to the heirs of Elena Agapita Dávila and Ramón Córdova Díaz, and that it has never been and is not now plaintiff's property. At the hearing plaintiff-appellant offered and introduced pertinent evidence, without objection from the other party, stating that she was going to present her case not only under the theory of the possible nonperformance of contract but also under the theory of acquisitive prescription. The court, sustaining an objection by the defendants, did not permit appellant to testify on certain particulars of the verbal agreement between her and Ramón Córdova Díaz because it involved statements made by a deceased, and the case continued on the second theory thus established, namely, acquisitive prescription.

After the hearing, the trial court of Bayamón made the following findings of fact and conclusions of law:

### "Statement of Facts Proved

"1. Plaintiff has never been nor is the owner of the property in litigation.

"2. Ramón Córdova Díaz and his wife, Elena Agapita Dávila, purchased and paid for the real property in question, and it was recorded in their name in the Registry of Property.

"3. The fact that plaintiff occupied and still occupies the real property has never implied that she was the owner.

### "Conclusions of Law

"1. Since plaintiff did not prove the allegations set forth in the complaint, she has no right to the relief requested therein, wherefore judgment cannot be rendered adjudging that plaintiff is the owner of the house described in the complaint."

In conformity with its findings of fact and conclusions of law, the court rendered judgment dismissing the complaint, with costs against plaintiff, plus $100 for fees for defendant's attorney.

It is to be noted that the trial judge made no specific finding as to whether or not plaintiff-appellant's possession was sufficient to establish a right of ownership in her favor by extraordinary prescription, pursuant to our judgment of May 29, 1952, remanding the case for compliance with Rule 52(a) of the Rules of Civil Procedure of Puerto Rico. It is difficult for us to regard finding No. 3, which says, "The fact that plaintiff occupied and still occupies the real property has never implied that she was the owner," as a finding on the real issue here presented, which is the creation of a right of ownership by extraordinary prescription, for it does not state how long appellant has occupied the house of litigation, the day she took possession of the house, in what belief and the character of the possession. Since this Court has power to set aside the finding of the trial court for the reason that, if the fact that plaintiff has lived on the property, if she did so with public belief of ownership, is sufficient to create rights in her favor, such finding is clearly erroneous in the light of the facts (Rule 52(a)) and the law applicable thereto, we shall analyze, first, the question of law, in order to determine what kind of evidence is required to prove extraordinary prescription, and, second, the questions of fact, in order to determine whether such facts are sufficient to vest her with the right of ownership by extraordinary prescription, as plaintiff-appellant alleges to have proved.

Section 1859 of the Civil Code of Puerto Rico provides that "Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for thirty years without the necessity of title nor good faith and without distinction between present and

absent persons, with the exception mentioned in Section 475, second article, Chapter I, Title VII, Second Book, of this Code," namely, with the exception of continuous and not apparent servitudes and discontinuous servitudes, either apparent or not apparent, which can only be acquired by virtue of a title, and are therefore not subject to prescription. According to Manresa, "the section under consideration should be read in connection with § 447 [§ 376 of our Code] and, therefore, the possession to which it refers and which is liable to produce ownership by extraordinary prescription must be exercised in the belief of ownership, because according to that section in order that possession may serve as a title for the acquisition of ownership, it must have been acquired and enjoyed in that belief. Hence, the *colono*, the bailee, the attorney in fact, and, in general, all those who possess in the name or in representation of another, can not acquire the ownership of the thing possessed by them or any other right, by prescription, whether ordinary or extraordinary, no matter how long they are in possession thereof, because they do not possess in the belief of ownership. The Supreme Court [he refers to the Supreme Court of Spain] confirms that doctrine by declaring that § 1959 of the Code [1859 of ours], in requiring as sole condition for the extraordinary prescription the uninterrupted possession for thirty years, does not refer to the material possession of the thing, but the possession in the belief of ownership, as inferred from §§ 444, 447, and 1941. (Judgment of November 19, 1910.)" 12 Manresa, *Comentarios al Código Español*, 906, 907, rev. 5th ed. of the Instituto Editorial Reus, 1951.) Sections 444, 447, and 1941 of the Spanish Civil Code are identical with §§ 373, 376, and 1841 of the Civil Code of Puerto Rico.

We must therefore determine what is meant by possession "in the belief that he is the owner" by reading as a whole the provisions of §§ 373, 376, and 1841 of our

Code. Section 373 provides that "Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession," and are not therefore reckoned for extraordinary prescription by uninterrupted possession for thirty years.

In the consideration of this case, it will suffice to examine the first concept, "acts merely tolerated," namely, mere tolerance. In his commentaries on § 444 of the Spanish Civil Code which, as has been seen, is equivalent to our § 373, says Manresa: "The term 'merely,' employed in § 444, seems at first contact strange and unnecessary, but the matter is a delicate one and the Code could not leave a handy remedy to the possessor to assert in any event that a third party, solely because of his own tolerance, was performing possessory acts which could in nowise affect his possession. Therefore, the purpose of that adverb is, in our opinion, to limit the scope of the term *to tolerate*. To tolerate means to suffer, to consent tacitly, to regard with indifference acts which are neither licit nor meet with the approval of the person present, or is aware and does not contradict them. Everything might be considered as tolerance and, hence, the danger of this term. Truly, it would not be sufficient to speak of merely tolerated acts if there did not exist in the Code another section which explains the real meaning of the term. According to § 1942 [§ 1842 of our Code], acts of a possessory character performed by virtue of *a license or by mere tolerance* on the part of the owner are of no effect in establishing possession. Does the law make any distinction in § 1942 between license and mere tolerance, or does it regard both terms as synonyms? The only difference between this Section, whose doctrine is supplemented by that

of § 1941 [§ 1841 of our Code, which reads: 'Possession must be in the capacity of an owner, public, peaceful, and uninterrupted,'] and § 444 [our § 373] under consideration is the application of the same idea to different objects or to a different purpose. Those Sections refer to the possession which leads to prescription, and they therefore refer to tolerance, lack of knowledge, or opposition on the part of the *owner*. Section 444 [our § 373] refers to any possession tolerated, ignored, or rejected by any *possessor*, whether or not he is the owner. This notwithstanding, the idea is the same. Section 444 [our § 373] lays down the general rule; §§ 1941 and 1942 [our §§ 1841 and 1842] constitute one of its most important and legitimate applications. It is significant that § 444 [our § 373] as well as § 1942 [our § 1842] speak of *mere* tolerance, as if they intended to separate tolerance from mere tolerance, or *as if one and the other were not the same thing*. Moreover, § 444 [our § 373] does not add to the acts merely tolerated those performed by virtue of a license or permit. Hence, the inference is that the law does not mean to refer to all tolerance on the part of the owner or possessor, but only to mere tolerance, *and considers as such the authorization, permit, or license by virtue of which possessory acts are performed or exercised*. Thus, the question becomes more simple, *for it is reduced to the existence or nonexistence of the permit*. Otherwise, the weight of the question would become doubtful and exposed to danger, for the owner would never cease to contend that there was only tolerance on his part. It is difficult, in fact, to draw a dividing line between tolerance on the part of the owner and the relinquishment of his right whenever the acts of the holder recur, and particularly when the lapse of time keeps ratifying and consolidating a relation which may be questioned as to whether or not it was originally legitimate. Whenever there is a license or permit, the evidence is easier. It is the duty of the judges and courts to determine in each

case whether there is mere tolerance or real abandonment of the right on the part of the owner." 4 Manresa, *Comentarios al Código Civil Español*, 170, 171 (5th ed. cor. and enl. by Editorial Reus, 1951). (Brackets ours.)

The first rule we must lay down is that possession derived from the authorization, permit, or license granted by the owner shall never be considered, for extraordinary prescription purposes, as possession in the belief of ownership; but that the possession derived from the owner's tolerance shall be considered as possession in the belief of ownership for the purposes of extraordinary prescription, then such tolerance, as something different from mere tolerance, becomes in reality of fact and of law an abandonment of a right on the part of the owner, and the social purpose sought by prescription is that there be no abandoned rights which may affect the territorial credit, productivity, or juridical policy of national property.

Section 376 of our Civil Code provides: "Only the possession acquired and enjoyed by a person in the belief that he is the owner can serve as a title to acquire ownership." Its concordance with extraordinary prescription clearly appears from the following commentary by Manresa: "It has been asserted that the Code, when treating possession, overlooks one of its most important effects: prescription. This is not true, as evidenced by § 447 [our § 376], but the strange thing is that those who make the foregoing assertion later criticize § 447 [our § 376] as being properly a matter of prescription. The Code merely lays down a principle which is developed throughout §§ 1930 to 1960 [1830 to 1860 of our Civil Code, bearing on general prescription provisions and the prescription of ownership and other property rights]. One of the possible effects of possession is the prescription to which only the possessor in the belief of ownership can aspire." 4 Manresa, *op. cit.* at pp. 213, 214. (Brackets ours.)

To determine the question before us, it will suffice to consider what is meant by the term "in the belief that he is the owner" in the civil-law institution of possession. This takes us to the general provision of § 362 of the Civil Code of Puerto Rico, equivalent to § 432 of the Spanish Civil Code, which provides: "The possession of property and rights may be considered in one of two different aspects: either in that of the owner, or in that of the holder of the thing or right to keep and enjoy them, the ownership belonging to another person." We notice that the wording of the Puerto Rican section, instead of following strictly the Spanish wording, which reads: ". . . may be considered in one of two different beliefs," was changed so as to read "may be considered in one of two different aspects." But we attach little importance to the variation, not only because the change is purely of form and does not alter the contents, but because the Spanish wording, "in the belief that he is the owner" is used throughout the remaining Sections which are related to § 362. Reading § 447 [our § 376] which provides, "only the possession acquired and enjoyed by a person in the belief that he is the owner can serve as a title to acquire ownership", together with § 432 under consideration [our § 362], Manresa says: "We admit that in view of the generality of § 430 [our § 360, which provides: Natural possession is the holding of a thing or the enjoyment of a right by any person. Civil possession is the same holding or enjoyment joined to the intent of holding the thing or right as one's own'], we would not be disappointed with that distinction which would be tantamount to separating the right to possess in the owner from the right to possess in another person, the latter right being a mere exercise with no fundamental right supporting it; but that is not the purpose of § 432 [our § 362], which is easily verified by a mere reading of § 447 [our § 376]: 'Only the possession acquired and enjoyed by a person *in the belief that he is the*

*owner* can serve as a title to acquire *ownership.*' If the possession in the belief that he is the owner is the only possession which can serve as a title to acquire ownership, it is clear that one who possesses in the belief that he is the owner *is not the owner himself but one who aspires or may become the owner.*" 4 Manresa, *op. cit.* at p. 79. (Italics ours.)

Manresa goes on to say: "The belief must be created outside the will of the possessor and apart from his special frame of mind. One who claims to be owner, whether or not he believes himself to be such, behaves as an owner, performs acts of an owner, and is or may be considered as such by all those who witness the relation or exercise of his right. Belief means opinion, judgment of something: in the belief that he is the owner is equivalent to in the opinion of ownership, not in his own opinion but in the opinion of others, in the opinion or judgment formulated by others. Belief is an idea conceived by the mind by virtue of acts or deeds witnessed by or known to it. Belief also means belief, not of the possessor, but of someone else . . . "In a town or in a region it is known to whom each property belongs; the nearest proprietors know it, and through them the most remote one and whoever wishes to find out; the parents know it and through them the children; they know that a certain orchard belongs to such a marquis, and that Pedro is his lessor, or administrator, or overseer; they know what lands Juan sold to Luis, or that at Antonio's death his widow or children, or his brothers and sisters inherited his estate; they know that a suit is filed and that a deposit has been made or an administration has been instituted; they see that A rides B's horse; that there is a right of way through a particular pasture ground; that the waters from a certain yard run through another; they know that C pays certain rentals to the city hall or to a private individual; that D has mortgaged his lands; that G is a money

lender and that F and H are his debtors; that L is the mule keeper of S, or that T is the stage driver of certain carriage enterprise, etc. That opinion or this public belief does not stem from appearances only; it stems from that which is recognized and known, in addition to what is seen and observed. It is a well-founded belief, although it may be erroneous, which is not strange at all, for the possessor himself makes mistakes. It is a frame of mind of third persons, of the general mass of society corresponding to the frame of mind of the possessor; *it is the good faith,* so to say, *of all those who are not the possessor himself.*" 4 Manresa, *op. cit.* at pp. 81, 82. (Italics ours.) Manresa further states: "Otherwise the provisions of § 432 [our § 362] cannot be branded, as someone intends, as surplusage; it is not one of the many abstractions included in the codes as a tribute to the doctrinal mandates rather than by command of positive exigencies; it is precisely the foundation of the entire doctrine bearing on the acquisition of ownership of things and rights by prescription; which acquisition, on the one hand requires *at times* that the possessor should have *the belief* that he is the proprietor, while on the other hand it *always* requires that the possession *be in the belief that he is the owner,* having no regard for the possessor's special frame of mind but for public opinion, for the general belief derived from the circumstances preceding and accompanying each possession." 4 Manresa, *op. cit.* at p. 83. (Brackets ours.)

Note how carefully Manresa separates the elements of public good faith in the provision establishing the possession "in the belief that he is the owner" for extraordinary prescription, inasmuch as § 1859 of our Civil Code provides for prescription by "uninterrupted possession of the same for thirty years without the necessity of title nor *good faith,*" and the element of personal good faith in the possessor's belief, in good faith, for ordinary prescription, inasmuch as

§1850 of our Civil Code provides that *"Good faith* of the possessor consists in his *belief* that the person from whom he received the thing was the owner of the same, and could convey his title," and § 1857 of our Civil Code which provides: "Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with *good faith* and with a proper title," namely, the outward expression of public belief, in the case of "in the belief that he is the owner" of extraordinary prescription, in contraposition to the inwardness of subjective belief, in the case of possessor's good faith of the ordinary prescription.

The second rule to be laid down is that the possession attributed to the possessor by public and general belief, in the sense that he is the owner of the thing possessed, independently of the belief which the possessor himself may have on the matter, shall always be considered as *possession in the belief that he is the owner* for the purposes of extraordinary prescription.

Section 1841 provides that, for the purposes of any prescription, both ordinary and extraordinary, "Possession must be in the capacity of an owner, public, peaceful and uninterrupted." ■ Commenting on § 1941 of the Spanish Civil Code, which is equivalent to our § 1841, Manresa says: "This statutory requirement [he refers to the possession in the belief that he is the owner] has already been explained and justified in the commentary on that section; [he refers to § 447 of the Spanish Civil Code, equivalent to our § 376, which provides that: 'Only the possession acquired and enjoyed by a person in the belief that he is the owner can serve as a title to acquire ownership']; but, furthermore, it

is of such good juridical sense that its necessity need not be shown inasmuch as the possession of the lessee, of the depositary, of the bailee, or of any other person who possesses in the name or on behalf of another, can not serve as a basis for prescription, because those persons do not possess for themselves but for another, and there is lacking in that possession the *animus domini*, a necessary element for the acquisition of property." 12 Manresa, *op. cit.* at 825. (Brackets ours.) To this we may add that the mere holder, the usufructuary, the usuary, and the creditor in antichresis are in the same position.

As respects the publicity element, Manresa further comments: "Another element which is necessary in order that possession may be acquired by prescription is that it must be public. This is as justified as the preceding requirement because, if it were hidden, it could never reach, for that same reason, the knowledge of the owner who is the prejudiced party, and, therefore, the basis for the presumption on which prescription is founded would be lacking, because if the true owner is not aware of the possession, he can not give, or refuse to give, his consent or acquiescence thereto and his silence may not be interpreted as giving his favorable consent to prescription, which is the legal reason that justifies that means of acquisition.

"In accordance with this rule, an author has said that in order for prescription to lie, possession must be public 'because when a thing is possessed clandestinely and secretly it can not be claimed by its legitimate owner and the ground for presuming the abandonment on the part of the owner would be lacking.'" 12 Manresa, *op. cit.* at 827.

As to the element of peacefulness, Manresa further comments: "Possession must be peaceful because violence is opposed to all notions of law, and whoever possesses by virtue of a violent act does not hold the lawful or peaceful possession required by law as a basis for prescription, nor may

he avail himself of the relief afforded to a peaceful possessor as owner." 12 Manresa, *op. cit.* at 829.

The possession must be, in addition, continuous or uninterrupted, as required by § 1841, and, therefore, under §§ 1844, 1845, 1847, and 1848, the possession shall be deemed to be interrupted in the following cases: (1) by abandonment of the thing possessed for more than one year (natural interruption) ; (2) by judicial citation of the possessor, even if it should be by order of a court or of a judge without jurisdiction (civil interruption) ; (3) by judicial or notarial order, provided that within two months from the execution thereof a complaint as to possession or ownership of the thing contested be presented to the court or judge; (4) by any express or implied acknowledgment which the possessor may make with regard to the right of the owner.

Natural interruption must take place before prescription is consummated by the lapse of time, for as Manresa wisely states: "Those acts which interrupt possession held by one who seeks prescription must be performed before prescription is acquired, for otherwise they would not serve to interrupt the prescription but would operate as a waiver of the vested right. This was the ruling announced by the Supreme Court [he refers to the Supreme Court of Spain] in the judgment of March 18, 1902, in which it established the doctrine that prescription shall be deemed to be interrupted only by such acts as are provided by law which are *performed during the period required in order that prescription may lie;* and *they must not be mistaken for those subsequently performed which might imply the intent to waive the benefit of prescription. . .*" 12 Manresa, *op. cit.* at pp. 836, 837. (Brackets ours.)

The same is true, says Manresa, as to the interruption of prescription by express or implied acknowledgment which the possessor may make of the owner's right: "Further comment is unnecessary to justify the provision contained in

§ 1948 *supra* [our § 1848], but in order to avoid any distorted interpretation from its broad language, we must hasten to state that not every act of acknowledgment of the owner's right produces interruption, but it is indispensable that such acts be valid and legally effective. In fact, if the express acknowledgment or the acts from which it may be implied is based solely on error, deceit, violence, or any other cause which vitiates the consent, both means of acknowledgment would be ineffective to cause interruption, for the law could not recognize any effect in that vitiated expression of the will or consent. If the acts performed by the possessor in acknowledging the right of the owner were the product of an offense, or of any cause repugnant to law or morals, those acts would be legally void and void acts cannot produce valid and effective juridical effects. *Furthermore, those acts of acknowledgment to be valid must be performed before prescription is perfected,* for otherwise they would imply at the most a waiver of the right earned or acquired by prescription, but they would in no wise interrupt the origin of an already-vested right." 12 Manresa, *op. cit.* at 854, 855. (Italics ours.)

Conclusion: For the extraordinary prescription established by § 1859 of the Civil Code of Puerto Rico to exist, our courts of justice should require proof of the following facts: (1) continuous possession of the property for thirty years, (2) by tolerance of the owner of the real property, (3) since the person claiming prescription has taken possession of the property without authorization, permit, or license granted by the owner, or by virtue of an agreement made with the owner, (4) which possession he has held in the public belief that he is the owner, according to the common belief of the community where he lives, not by virtue of the possessor's own belief that he is the owner of the property possessed by him, and (5) the possession of which is also public and peaceful, and (6) has not been subject to natural

interruption, namely, by abandonment of the thing by the possessor for more than one year, or to civil interruption, by virtue of a judicial or notarial order, or by express or implied acknowledgment of the owner's right made by the possessor *before the expiration of thirty years required for prescription*, and (7) without the possessor having expressly or impliedly waived his title by prescription for any legal cause warranting such waiver after extraordinary prescription has been consummated.

With this doctrine in mind, and since the lower court made no satisfactory findings of fact or conclusions of law on the question of extraordinary prescription, let us see what juridical facts can be extracted from the evidence offered by the parties at the trial:

1. As to the continuous possession of the property: There is no question that plaintiff-appellant has continuously occupied the house in dispute since 1912, and that defendant-appellee herself admitted that appellant as well as her daughter Palmira have lived in the house for forty years. (Tr. Ev. 15.)

2. As to the fact of the tolerance by the owner of the real property: There was no evidence to show that either the predecessor during his lifetime, or his heirs before 1953, made any claim against the possessor for recovery of the real property (Tr. Ev. 26, 14), wherefore the evidence clearly establishes the fact that the first claim to recover the property was made after the lapse of more than thirty years of continuous possession required by law for extraordinary acquisitive prescription.

3. As to the taking of possession of the real property with the authorization of appellee's predecessor, or by virtue of some agreement with the predecessor for the occupation of the house, there is no evidence of any such authorization or agreement. Therefore, this is not a case of mere tolerance but a clear case of tolerance, equivalent to abandonment of a property right.

4. As to the possession in the belief of ownership, the evidence of the appellant was to the effect that she moved to the house because she was its owner; that she gave Ramón Córdova Díaz $435 to purchase the house (Tr. Ev. 7, 8), and that she has occupied the same in the belief that she was the owner since 1912 and made the necessary repairs (Tr. Ev. 12); that after the death of Ramón Córdova Díaz she was ordered to pay rent, "to which I answered that I was the owner of the house and would pay nothing" (Tr. Ev. 9); that she has occupied the same publicly and peacefully since 1912 in the belief that she is the owner (Tr. Ev. 12). Vitalia Córdova, witness for appellant, testified that she knows for a fact that appellant has occupied the house in question since 1912 up to the date of her testimony (February 6, 1951); that she does not know whether she paid any rent because "that is a personal matter." (Tr. Ev. 16, 17.) As for the appellee, she readmitted that it is correct that appellant has occupied the house since 1912 (Tr. Ev. 16, 17), and the judicial administratrix of the defendant-appellee, when testifying on the payment of the rent, said: "As soon as I was appointed judicial administratrix (1943 or 1944). I advised her that she was required to pay rent, to which she replied she would pay nothing." (Tr. Ev. 25.) This statement corroborates that of appellant, "to which I answered that I was the owner of the house and would pay nothing." (Tr. Ev. 9.) All inferences, primary as well as secondary, to be drawn from the direct testimony are that appellant occupied the house in question "in the belief that she is the owner." It is true that such belief of ownership transpires more evidently from her own testimony than from that of her other witness, Vitalia Córdova, and that the evidence tends to establish the personal rather than the public belief of appellant's ownership. But from the fact that plaintiff-appellant lived in the house from 1912 to 1951, which was corroborated as a public fact

by Vitalia Córdova, it is not difficult to infer, in view of the fact that there is nothing in the evidence to controvert such assertion, but on the contrary, it is actually admitted by defendant herself, that the possession by appellant was, by virtue of that public belief of good faith, a possession in the belief of ownership; especially when Vitalia Córdova herself was asked, "Have you seen her pay any rent within the house?," she answered categorically, "I don't know; that is *a personal matter;* that I don't know" (Tr. Ev. 17), which proves that her belief as a neighbor was, from outside the house, that appellant was not a tenant but a true possessor in a concept other than lessee. It having been proved that the possession had its origin in the purchase of the property by Ramón Córdova Díaz, with the possessor's money, which fact was not contested either by the evidence of the other party (Tr. Ev. 7 and 8), there is no question that in order to destroy the presumption established by § 365 of our Civil Code, which provides: "It is presumed that possession is continued under the same understanding by which it was acquired," the burden of proof fell upon the judicial administratrix and not upon the possessor. But when the judicial administratrix was asked, ."How long have you known her to occupy that property?," she answered, "I'll tell you, I did not intervene in my father's affairs," and the evidence contains no other explanation as to the prescriber's possession.

Appellee's theory at the trial seems to be that since the heirs have, as they do have, a title which is recorded in their predecessor's name, such fact was sufficient to defeat appellant's right of possession pursuant to § 1849 of our Civil Code, which provides: "Against the title recorded in the registry of property, the *ordinary* prescription of ownership or of property rights shall not obtain to the prejudice of a third person, except by virtue of another title similarly recorded, and the time shall begin to run from the date of

the entry of the latter." This, however, does not hold for *extraordinary* prescription of thirty years. Judgment of January 24, 1907 of the Supreme Court of Spain, 106 *Jurisprudencia Civil* 172 (ed. by Editorial Reus, S. A., Madrid, 1922.) "Section 1949 [our § 1849] of the Code refers to *ordinary prescription* of ownership or of real rights when providing that such prescription shall not obtain against the title recorded in the registry of property, except by virtue of another title similarly recorded; but that provision is not applicable even in the absence of the condition of the third party which it requires *whenever prescription for thirty years required by § 1959* (our § 1859) is involved." 7 Oyuelos' *Digesto* 864, last paragraph (ed. by *Imprenta de Julio Cosano*, 1932.) (Brackets ours.)

5. As to the fact that the possession was public and peaceful, appellant's assertion (Tr. Ev. 12) has not been directly or indirectly controverted by appellee's evidence, and we must therefore consider it as proven.

6–7. As to the fact that the possession by appellant was interrupted, or her right of possession waived, the appellee's evidence discloses that the interruption, consisting in an offer by appellant to pay $1,000 for the house, took place in 1948, or thirty-six years after appellant took possession of the house (Tr. Ev. 24, 26), and we have seen that after prescription is completed any implied acknowledgment by the possessor must be regarded, not as an act interrupting the possession, but as a possible waiver of the ownership right, and we are bound to determine whether such waiver is legally valid.

Let us examine the facts of such offer. Since the title was recorded in favor of Ramón Córdova Díaz, the heirs, because of the presence of minor heirs, requested leave to sell the possessor's house as if it were the heirs' property (Tr. Ev. 24). Before the house was sold at public auction appellant offered to pay $1,000 for it; the succession rejected

the offer alleging that the minimum auction price was $1,500; thereupon the possessor brought the present action against the heirs to assert her right once and for all. In view of such judicial action, the heirs called off the auction and answered the complaint.

Assuming, without deciding, that the bare fact of the offer was sufficient to establish the implied acknowledgment of the heirs' right as owners, which would have interrupted the limitation period had it been timely made, there is no question that such fact is not sufficient at law to constitute a waiver of the right of ownership which the former possessor had, after the thirty-year extraordinary prescription was completed. A person can offer any amount to avoid a claim against his own real property, or simply to avoid a suit. In view of the peculiar position of the parties in the instant case, such offer is neither unusual nor questionable.

■ The other argument offered by the defendant heirs is that they paid taxes on the property. We have already held that the fact that a person has been in possession of certain property for well over thirty years without paying taxes thereon, does not mean, by itself, that she was a mere occupant. *Jiménez* v. *Municipality,* 70 P.R.R. 491, 497 (Todd, Jr.), (1949). For the purposes of prescription, the abandonment of a right by the owner creates a legal relation between the owner and the possessor exclusively and bears no relation to other persons, whether they are public entities or merely private individuals. There is no question that the evidence in the instant case was sufficient to establish clearly appellant's title acquired by extraordinary acquisitive prescription.

The judgment rendered on June 16, 1952, by the Bayamón Section of the former District Court of Puerto Rico, now Bayamón Part of the Superior Court of Puerto Rico, will be reversed, and the Bayamón Part of the Superior Court of Puerto Rico is hereby ordered to render another

declaratory judgment declaring Tomasa Dávila Padró, plaintiff-appellant herein, to be the owner of the property involved in this proceeding, and ordering in turn the Registrar of Property of Bayamón to cancel any record of that property which may appear in favor of Ramón Córdova Díaz or his heirs, and any other pronouncements not inconsistent with this opinion.

Mr. Justice Marrero did not participate herein.